UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CYNTHIA SEWARD,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>    Defendant. | CASE NO. C05-297-TSZ-MAT<br><br>REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Cynthia Seward proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ).  Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended that this matter be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1965.[1]  She completed at least the ninth grade of high school and reported special education classes.  Plaintiff previously worked as a waitress, landscaper, and housekeeper.

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

Plaintiff filed an application for SSI benefits in June 2002, alleging a disability onset date of June 16, 2002. Her alleged disabling conditions included depression, post-traumatic stress disorder, and anxiety. (*See* AR 18, 86, 109.) Plaintiff's application was denied initially and on reconsideration, and she timely requested a hearing.

ALJ John F. Bauer held a hearing on July 8, 2003. (AR 217-59.) The ALJ heard testimony from plaintiff and vocational expert Michael Swanson. On March 10, 2004, ALJ Bauer issued a decision denying plaintiff's application for SSI benefits. (AR 18-30.)

Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review plaintiff's claim. (AR 5-8.) Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since June 16, 2002. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's affective disorder, anxiety disorder, and personality disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria for any listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform her past relevant work as a landscape laborer. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an

adjustment to work that exists in significant levels in the national economy. The ALJ alternatively found plaintiff could perform work including simple and routine tasks, with no contact with the general public, including work as a laundry worker and janitorial worker.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

In this case, plaintiff argues that the ALJ erred in assessing her RFC and proffering a hypothetical to the vocational expert, that the vocational expert's testimony was demonstrably incorrect and did not address her past relevant work, and that the ALJ erroneously evaluated the opinions of examining psychologist Frank Hammer. She requests remand for further administrative proceedings. The Commissioner asserts that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons described below, the undersigned recommends that the ALJ's decision be affirmed.

RFC and Hypothetical

Plaintiff asserts the deficiency of the RFC assessment and hypothetical to the vocational expert through the omission of a moderate concentration limitation – a limitation plaintiff posits was assessed by Dr. Trevelyan Houck and adopted by the ALJ. Plaintiff also argues that the hypothetical improperly failed to address her educational level. However, as discussed below, plaintiff fails to demonstrate error with respect to the RFC assessment or hypothetical.

1. **Concentration Limitation**

Pursuant to 20 C.F.R. § 416.920a, an ALJ must evaluate the symptoms, signs, and

laboratory findings substantiating the presence of mental impairments – the "A" criteria – and then rate the degree of functional limitation resulting from those impairments – the "B" criteria (or "C" or "D" criteria as applicable).  The four broad functional areas considered include:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. § 416.920a(c)(3).

In this case, the ALJ recounted the "B" criteria findings of three physicians – Dr. Charles Regets, Dr. Houck, and Dr. Frank Hammer – as reflected on completed Psychiatric Review Technique Forms (PRTF).  (AR 22-25.)  Dr. Houck's "B" criteria findings included a mild restriction in daily living, moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace, and no episodes of decompensation.  (AR 23, 174.)

After reciting Dr. Houck's "B" criteria findings on the PRTF, the ALJ stated:

> Dr. Houck considered the claimant only partially credible but noted that she did have some limitations.  He did not consider the limitations severe enough to prevent all work activity.  He considered her limited to simple, non-public work activity.  Dr. Houck noted the consultative evaluation by Dr. Carlson in which no limitations were expressed.  He felt the above mentioned evaluations and therapy notes supported limiting the claimant to simple and routine tasks with no public work activity.

(AR 23.)  These findings reflected comments made by Dr. Houck on a Mental Residual Functional Capacity (MRFC) Assessment form:

> [Claimant] reports that she is able to do many ADLs [activities of daily living,] but on occasion her condition interferes [with] activity.  [Mental status evaluation] noted linear, coherent, logical speech [and] thought processes.  She does have difficulty [with] serial 7s [and] spelling world backwards indicating concentration disturbance.  [Claimant] appears to be capable of simple tasks.
>
> . . .
>
> Credibility is partial, as [claimant] does have some limitations.  These do not, however, appear to be severe enough to prevent _all_ work activity.  The [consultative evaluation doctor] does not opine limitations, but GAU eval[uation and claimant's] reports of ADLs, coupled [with] current therapist's notes, support limits to simple, non-public activity.

(AR 180.)

The ALJ determined that plaintiff's impairments did not meet the criteria of any listed

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01 impairment at step three. (AR 25.) In so doing, he rejected the assessments of Drs. Carlson and
02 Hammer as, respectively, too conservative and too liberal, and, instead, gave "more weight" to
03 the assessment of Dr. Houck. (AR 26.)

04 Subsequently, in determining plaintiff's RFC at step four, the ALJ found plaintiff "limited
05 to simple and routine tasks" with "no work with the general public." (AR 27-28.) The ALJ's
06 hypothetical to the vocational expert likewise limited plaintiff to "limited contact with the public
07 and . . . simple, routine tasks." (AR 248.)

08 RFC is the most a claimant can do considering his or her limitations or restrictions. *See*
09 Social Security Ruling (SSR) 96-8p. A hypothetical posed to a vocational expert must include all
10 of the claimant's functional limitations supported by the record. *Thomas*, 278 F.3d at 956 (citing
11 *Flores v. Shalala*, 49 F.3d 562, 520-71 (9th Cir. 1995)). A vocational expert's testimony based
12 on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can
13 perform jobs in the national economy. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993)
14 (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

15 Plaintiff argues that, because the ALJ adopted Dr. Houck's finding of a moderate limitation
16 in maintaining concentration, persistence, or pace, substantial evidence does not support either his
17 RFC assessment or the hypothetical to the vocational expert – neither of which contained a
18 concentration limitation or a reasonable proxy for that limitation. In support of this argument,
19 plaintiff points to various cases. *See Thomas*, 278 F.3d at 956; *Ramirez v. Barnhart*, 372 F.3d
20 546, 552-55 (3d Cir. 2004); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003); *Newton v.
21 Chater*, 92 F.3d 688, 695 (8th Cir. 1996). Plaintiff further argues that, pursuant to *Andrews v.
22 Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995), the failure to include a concentration limitation
23 reflected an impermissible failure to reflect the totality of the opinions of Dr. Houck.

24 In response, the Commissioner distinguishes the assessment of mental impairments at step
25 three from the functional limitation assessment used at steps four and five, citing SSR 96-8p:
26 The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

> summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

The Commissioner points to Dr. Houck's more detailed explanation of his opinion provided on his MRFC, as quoted above. (AR 180.) The Commissioner posits that the ALJ appropriately relied on Dr. Houck's actual, more detailed functional capacity assessment, rather than the check-the-box responses on the PRTF. *See*, *e.g.*, *Crane v. Shalala*, 76 F.3d 252, 253 (9th Cir. 1996) (holding that ALJ permissibly rejected three psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions.")

In *Thomas*, the Ninth Circuit Court of Appeals found an ALJ's hypothetical to a vocational expert adequately incorporated a functional limitation on concentration, persistence, or pace – a limitation identified on a PRTF and adopted by the ALJ in his findings, where a physician testified as to those limitations and the vocational expert was instructed to credit that testimony. 278 F.3d at 953-54, 956. In *Andrews*, the Ninth Circuit considered a case in which the ALJ adopted an MRFC assessment of a nonexamining expert which included moderate limitations in "'concentration and persistence'" and "'adaptation'" categories. 53 F.3d at 1042-44. Considering a hypothetical addressing only social limitations, the Court concluded: "Since the hypothetical must consider all of the claimant's limitations . . . , the ALJ's hypothetical was insufficient to carry the secretary's burden of proving ability to engage in work in the national economy." *Id*. at 1044. However, plaintiff does not identify, and the undersigned does not find, any Ninth Circuit decisions directly addressing the extent to which PRTF findings must or should be included in RFC assessments and corresponding hypotheticals.

Other Circuits have, directly and indirectly, addressed this issue. In *Ramirez*, 372 F.3d at

555, the Third Circuit stated: "While SSR 96-8p does state that the PRTF findings are 'not an RFC assessment' and that step four requires a 'more detailed assessment,' it does not follow that the findings on the PRTF play no role in steps four and five, and SSR 96-8p contains no such prohibition." *Id*. Consequently, where the hypothetical to the vocational expert limited the claimant to, *inter alia*, "no more than simple one- or two-step tasks[,]" the Court found it was "not satisfied that these limitations take into account the ALJ's own observation (both in her opinion and in the PRTF) that [the claimant] *often* suffered from deficiencies in concentration, persistence, or pace.") *Id*. at 554. Similarly, in *Kazarsky*, 335 F.3d at 544, the Seventh Circuit found a hypothetical insufficient where it did not include a PRTF finding of frequent concentration, persistence, or pace deficits.

In contrast, in *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001), the Eighth Circuit found a hypothetical limiting a claimant to simple, repetitive, and routine tasks "adequately capture[d]" the determination that the claimant often had deficiencies of concentration, persistence, or pace. In that case, the physician who completed the PRTF identifying a concentration limitation had also prepared an MRFC concluding the claimant could "'sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function.'" *Id*. *Cf. Newton*, 92 F.3d at 694-95 (hypothetical indicating claimant had capacity for simple jobs insufficient because vocational expert testified concentration and persistence deficits related to basic work habits needed to maintain employment), *overruled in part on other grounds in Barnhart v. Walton*, 535 U.S. 212 (2002). In *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), the Sixth Circuit concluded that the ALJ "went beyond" the simple findings included in the PRTF and determined that the claimant's concentration problems were "minimal or negligible" based on the testimony of four physicians, and then "translated [the claimant's] condition into the only concrete restrictions available to him – [as identified by an examining physician] – and duly incorporated them into his hypothetical to the vocational expert."

01     Here, after describing Dr. Houck's "B" criteria findings, the ALJ described Dr. Houck's
02 narrative conclusions on the MRFC, twice stating Dr. Houck limited plaintiff to simple/routine
03 tasks and non-public work. (AR 23.) Explaining his conclusion at step three, the ALJ stated: "Dr.
04 Houck, in his review of the evidence, determined the claimant's impairments were severe and
05 restricted her to simple and routine tasks with no work with the general public." (AR 25.) The
06 ALJ's RFC assessment and hypothetical matched this interpretation of Dr. Houck's opinion
07 precisely. (AR 27, 248.) Therefore, the ALJ appears to have determined that Dr. Houck modified
08 his PRTF findings in his MRFC, and thereafter adopted the modified findings in assessing
09 plaintiff's RFC.

10     Although less clear than the factual situations involved in *Howard* and *Smith*, the ALJ's
11 interpretation of the evidence, and particularly Dr. Houck's opinion, was reasonable. The sole
12 reference to the category of concentration, persistence, or pace on the narrative portion of Dr.
13 Houck's MRFC reflects that plaintiff's difficulty with serial sevens and spelling "world" backwards
14 "indicat[es] a concentration disturbance." (AR 180.) Dr. Houck thereafter twice limited plaintiff
15 to simple, non-public activity. *Id*. Accordingly, the RFC assessment and hypothetical included
16 all of the functional limitations supported by the record.

17 2.     **Education Level**

18     At step five, an ALJ must account for a claimant's RFC and vocational profile – including
19 age, education, and work experience. 20 C.F.R. §§ 416.920(g), 416.960(c). As noted above,
20 plaintiff argues that the hypothetical improperly failed to address her educational level. However,
21 the ALJ's decision reflects consideration of the required vocational factors, including her
22 educational level (AR 19, 28), and the testimony at the hearing reflects a recitation of plaintiff's
23 educational background shortly before the testimony of the vocational expert (AR 242-48).
24 Accordingly, plaintiff fails to demonstrate reversible error on this point.

25                           <u>Vocational Expert's Testimony</u>

26     The Dictionary of Occupational Titles (DOT) raises a rebuttable presumption as to job

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995) (citing *Terry v. Sullivan*, 903 F.2d 1273, 1277 (9th Cir. 1990)). Pursuant to SSR 00-4p, an adjudicator must inquire as to whether a vocational expert's testimony is consistent with the DOT and, if there is a conflict, determine whether the vocational expert's explanation for such a conflict is reasonable. As stated by the Ninth Circuit: "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435-36 (vocational expert testified specifically about the characteristics of local jobs and found their characteristics to be sedentary, despite DOT classification as light work). *See also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("We merely hold that in order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation.") "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony." *Light v. Social Sec. Admin.*, 119 F.3d 789, 794 (9th Cir. 1997) (internal citations to *Johnson*, 60 F.2d 1435 n.7, 1435-36, and *Terry*, 903 F.2d at 1279, omitted).

In this case, in response to the ALJ's hypothetical, the vocational expert testified that plaintiff could perform laundry or janitorial work, which he identified as medium, unskilled jobs. (AR 248-49.) The vocational expert also testified that plaintiff's past work as a landscape laborer was heavy, unskilled work. (AR 253.) He responded in the affirmative when asked by plaintiff's attorney whether his testimony was consistent with the DOT. (AR 258.)

Plaintiff argues that the vocational expert's testimony was not consistent with the DOT. Specifically, she asserts that her RFC restriction to "simple" and "routine" tasks is incompatible with the "Reasoning Development" levels for the positions identified by the vocational expert, as well as for her past relevant work as a landscape laborer.

As indicated by plaintiff, each DOT listing includes a level of reasoning development. *See* DOT, App. C. Reasoning development is one aspect of the "General Educational Development

(GED) Scale" used in assessing DOT job listings. *Id.* (the GED also addresses levels of mathematical and language development). Levels one and two reasoning development are pertinent to the current discussion. Level one reasoning development is defined as the ability to: "Apply commonsense understanding to carry out simple one- or two- step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* Level two reasoning development is defined as the ability to: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.*

Plaintiff asserts that the limitation to simple tasks excludes level two reasoning development jobs – including all three of the positions at issue here. *See* DOT Nos. 361.685-018 (laundry worker), 381.687-018 (janitorial worker), 408.687-014 (landscape laborer). She maintains that the record does not include either a reasonable explanation for this conflict or persuasive evidence supporting a departure from the DOT. Plaintiff further notes that the vocational expert did not testify in response to her past work as a landscape laborer, other than to say that it is "unskilled" (AR 248-49, 253), and asserts that, given that this is also classified as level two work, substantial evidence does not support the ALJ's finding that this position did not require more than simple and routine tasks (AR 20, 27).

The Commissioner asserts that level two reasoning development work does not necessarily contemplate work requiring more than simple, routine instructions and tasks. She proffers the job descriptions for all three positions and asserts that nothing about those descriptions references detailed or complex instructions or tasks. [2] With respect to plaintiff's past relevant work as a

---

[2] The Commissioner also points to a Seventh Circuit decision in arguing that only conflicts with the DOT identified in the hearing require an explanation or remand for further proceedings. *See Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002) (SSR 00-4p "requires an explanation only if the discrepancy was 'identified' – that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation. Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late. An ALJ is not obliged to reopen the record. On the record as it stands – that is with no questions asked that reveal any shortcomings in the vocational expert's data or reasoning – the ALJ was entitled to reach the conclusion she did.") However, as

landscape laborer, the Commissioner maintains that the ALJ's finding was supported by substantial evidence.

An RFC limitation to simple, routine tasks does not necessarily preclude plaintiff from carrying out detailed *but uninvolved* instructions, particularly with respect to the positions at issue here. Accordingly, the undersigned concludes that plaintiff fails to demonstrate an actual conflict between the vocational expert's testimony and the DOT, or any other error in the ALJ's step five determination.

Additionally, plaintiff further fails to demonstrate error with respect to the ALJ's step four decision, which did not require the testimony of a vocational expert. *See Matthews*, 10 F.3d at 681 (testimony of vocational expert at step four was useful, but not required). Plaintiff has the burden of establishing her inability to perform past relevant work at step four. *Pinto*, 249 F.3d at 844. Here, the ALJ developed an adequate record to support his step four finding – noting that plaintiff performed work as a landscape laborer for two years, finding that this work did not involve more than simple and routine tasks, and was not performed with the general public, and noting that the State Agency found plaintiff capable of performing this job. (AR 19-20, 27.) This finding, like the alternative finding at step five, was supported by substantial evidence.

### Opinion of Dr. Frank Hammer

Plaintiff argues that the ALJ erroneously evaluated the opinions of examining psychologist Frank Hammer. In assessing the opinion of this physician, the ALJ stated as follows:

> The claimant's attorney arranged for a consultative evaluation with Dr. Hammer. That examination took place in July 2003. The information provided and the mental status results are basically similar to the information provided to Dr. Carlson. I note in particular that at both examinations the claimant was cooperative and oriented. She displayed the same memory ability in that she registered 3/3 objects and recalled 2/3. She had limited information about current events. She was able to correctly report the bordering states of Washington. At the time of her evaluation with Dr. Carlson, she was unable to perform serial 7's but could perform serial 3's. She could perform

---

noted by plaintiff, the Commissioner fails to show that this reasoning has been adopted in the Ninth Circuit. *See, e.g., Terry*, 903 F.2d at 1275, 1277-78 (involving attack on ALJ's conclusions, as based on written testimony of vocational expert).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

> both serial 7's and 3's by utilizing counting at the examination with Dr. Hammer. She was unable to spell "world" backwards. Her ability to abstract was limited. Despite these similar mental status findings, Dr. Carlson diagnosed dysthymia with a [Global Assessment of Functioning (GAF)] of 60 and Dr. Hammer diagnosed listing level depression, panic disorder, learning disorder and personality disorder NOS with a GAF of 55.
>
> I note one significant difference between the two examinations. The claimant reported to Dr. Hammer that at times she thought of suicide and she reported some episodes of hearing voices. These assertions are denied throughout the record until this appointment. I question these assertions given the denials in the prior reports.
>
> I also question the GAF ratings. There is only a 5 point difference between the two scores and yet Dr. Hammer assessed the claimant's functioning in the "extreme" and "marked" levels of limitations. This is highly unusual. Further, I question the finding of "three" repeated episodes of decompensation. There is no explanation for this finding. The claimant has never been hospitalized. She has not undergone significant treatment that would usually represent an episode of decompensation.

(AR 25-26.) The ALJ indicated that, while he considered Dr. Hammer's assessment, he did not assign it great weight. (AR 26.) As noted above, the ALJ found Dr. Hammer's assessment too liberal and Dr. Carlson's assessment too conservative, and gave more weight to the assessment of Dr. Houck. (*Id.*)

Plaintiff raises two specific issues with the ALJ's assessment. First, she asserts that the ALJ made harmful errors of fact in asserting that plaintiff denied thoughts of suicide and hearing voices until her visit with Dr. Hammer. She points to her July 2002 statement that, while she did not have current suicidal ideation, she had thoughts of suicide one month before. (AR 159-60 (plaintiff reported "some thoughts of suicide but has no plan or attempts currently."; "no current ideation. previous thoughts (1 month ago) of harming self, had plan but made no attempts.")) She also notes the citation in the record to a contract not to harm herself she signed in October 2002. (AR 109.) Plaintiff additionally notes that her counselor indicated she had mild hallucinations in June 2003. (AR 183.)[3] Second, plaintiff argues that the ALJ emphasized too heavily the GAF

---

[3] Although plaintiff adds that a nurse practitioner stated she had moderate suicidal trends and moderate hallucinations in January 2004 (AR 211), this fact is not relevant to the ALJ's critique of Dr. Hammer's July 2003 evaluation.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

ratings in rendering his assessment of Dr. Hammer's opinion.

Plaintiff fails to support her contention that the ALJ's GAF-based criticism was in any respect inappropriate or inaccurate. Moreover, plaintiff does not raise, nor is there any support for, an argument as to the ALJ's criticism of Dr. Hammer's unsupported finding of three episodes of decompensation.

With respect to the ALJ's criticism relating to suicidal ideation and hearing voices, plaintiff accurately points to contrary evidence from July 2002 (past suicidal thoughts) and June 2003 (mild hallucinations). (*See* AR 159-60, 183.) Nonetheless, this evidence does not significantly undermine the ALJ's assessment of Dr. Hammer's opinion. The fact that plaintiff signed a contract not to harm herself does not confirm the existence of suicidal thoughts; it could have merely been a form she was asked or required to complete. Also, while plaintiff reported previous suicidal thoughts in July 2002, the ALJ appropriately took note of her repeated denials in the past. (*See*, *e.g.*, AR 130, 136, 140.)[4] Indeed, while the June 2003 form from plaintiff's counselor indicated mild hallucinations, it also reflected no "suicidal trends." (AR 183.) Other reports likewise indicate denials of hallucinations. (*See*, *e.g.*, AR 130, 136, 140, 162.)

Plaintiff fails to demonstrate reversible error in the ALJ's treatment of Dr. Hammer. The ALJ's assessment is a reasonable interpretation of the evidence and supported by the record.

///
///
///
///
///
///

---

[4] The Commissioner's attempt to differentiate Dr. Hammer's report as referencing *current* suicidal ideation and the July 2002 report as reflecting *past* suicidal ideation is unavailing. Because the ALJ did not make this distinction, this argument is an inappropriate post hoc rationalization. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

...

## **CONCLUSION**

For the reasons described above, this matter should be AFFIRMED. A proposed order accompanies this Report and Recommendation.

DATED this  19th  day of September, 2005.

/s/ Mary Alice Theiler
Mary Alice Theiler
United States Magistrate Judge